File 9/3/24  In re M.L. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re M.L., a Person Coming Under the Juvenile Court Law. | B331509<br><br>(Los Angeles County Super. Ct. No. 23CCJP00138E) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LATOYA L.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Pete R. Navarro, Juvenile Court Referee. Affirmed.

Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

_____

Latoya L., the former legal guardian of minor M.L., appeals an order of the juvenile court adjudicating M.L. a juvenile court dependent. She contends (1) insufficient evidence supported the court's Welfare and Institutions Code[1] section 300, subdivision (b)(1) jurisdictional finding that she failed or was unable adequately to protect or supervise M.L., and (2) the juvenile court should have exercised jurisdiction under section 601, subdivision (a), rather than section 300. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.    *Latoya's Probate Legal Guardianship of M.L.***

In July 2021, Latoya filed a petition in the probate court to be appointed 14-year-old M.L.'s legal guardian. In her petition, Latoya stated that she was a friend of M.L.'s mother, who had been incarcerated since 2018; the identity of M.L.'s father was unknown; and M.L.'s maternal grandmother, who was the child's previous legal guardian and with whom the child had resided in Nevada, passed away in April 2021.

The probate court in July granted Latoya temporary guardianship until December 2021. In October 2021, Latoya requested that the guardianship be terminated. The probate court denied the request and instead appointed Latoya M.L.'s

_____

[1]    All undesignated statutory references are to the Welfare and Institutions Code.

legal guardian and extended the temporary letters of guardianship.  Latoya petitioned the probate court again in February 2022 to terminate the legal guardianship.  The probate court denied the request without prejudice in April 2023.

## II.     *The Referral and Investigation*

In May 2023, Latoya reported to the Los Angeles County Department of Children and Family Services (Department) that she had been granted temporary legal guardianship of M.L. but did not wish to be the child's permanent legal guardian because the child engaged in assaultive behavior with teachers and students and at home.  The Department interviewed Latoya, who said she could no longer care for M.L.  Although Latoya had been trying to terminate the guardianship, her termination request had been denied because the child did not have another caregiver.  M.L. was diagnosed with attention deficit hyperactivity disorder, oppositional defiant disorder, and disruptive mood dysregulation disorder.  The child spit in Latoya's face, destroyed Latoya's property, and threw milk at a teacher.  Although Latoya resided with M.L. in Nevada, they visited Los Angeles weekly.  On the day of the Department's first interview of Latoya in May 2023, Latoya had brought M.L. to a Los Angeles hospital because the child threatened to kill herself, banged her head on a car window, and threatened to jump out of the car.  The child had five prior hospitalizations.  Latoya could no longer care for M.L. due to the child's behavioral and mental health issues and was not interested in any services to have the child continue in her care or remain in her home.  Latoya gave the Department consent to detain M.L. and place her in protective custody.

The Department interviewed M.L. at the hospital. The child was crying and upset that Latoya no longer wanted to care for her. Latoya had told M.L. multiple times that she would not be able to care for M.L. due to the child's behavioral issues. The minor admitted she had banged her own head on the car window and attempted to jump out of the vehicle. When M.L. was four years old, her half-brother sexually abused her. M.L. had not lived with her mother since she was eight years of age. When she lived with her mother, her mother's boyfriend would hit the child on her arm and leg. M.L. also saw him hit her mother. M.L. said that Latoya recently hit her with a belt for refusing to take her medication, being disrespectful, and having behavior problems at school. The child attempted to run away from home but was picked up by law enforcement several hours later.

M.L. told the Department she attended a school in Nevada for children with behavioral issues. The Department interviewed a counselor at the school, who said M.L. hit other children, yelled at teachers, and threw things when she was upset. The Department also contacted the Department of Juvenile Justice Services in Nevada. A probation officer said M.L. was on informal probation on an assault charge. The child also had two prior misdemeanor cases, one for obstructing a peace officer and another for harassment.

The hospital provided the Department with discharge papers showing "[p]sychiatric problem" as the reason for M.L.'s May 2023 emergency department visit. The child had been discharged with a diagnosis that included "[s]uicidal ideation."

In another interview with Latoya later in May 2023, Latoya denied hitting M.L. with a belt or using physical discipline.

4

## II.  *The Sustained Dependency Petition and Detention*

In May 2023, the Department filed a dependency petition on behalf of M.L. pursuant to section 300, subdivision (b)(1). As subsequently interlineated and sustained, the petition alleged, in count b-1, that Latoya was unable and unwilling to provide M.L. with ongoing care and supervision due to the child's behavioral issues, and such inability and unwillingness placed the child at risk of serious physical harm.

The juvenile court ordered M.L. detained on May 24, 2023.

## III.  *The June 2023 Jurisdiction and Disposition Report*

A social worker reinterviewed M.L. in June 2023. M.L. again said she was physically abused by Latoya. The child never wanted to return to Latoya.

The social worker also talked to Latoya in June 2023. Latoya asked how she would be able to care for M.L. without resources. Latoya said that she "did the best with [her] abilities" but M.L. "came with a lot of trauma." A lot of M.L.'s behavior came from that trauma. M.L. would "scratch herself and self-harm." Latoya said that M.L. "wouldn't have gotten this bad, if I had resources." She further stated, "The system is unfair to the caregiver, if I have lack of knowledge with a child with behavioral issues." Latoya said she would have to leave or call off work and "it started being a lot." Latoya again denied abusing M.L. and said that "[M.L.] doesn't understand the consequences" of her statements claiming abuse. Latoya started feeling unsafe and put cameras in her home. She stated, "No one wanted to care for [M.L.]"

The Department reported that there were no relatives at the time to assess for placement. It observed that Latoya had filed requests to terminate her legal guardianship at various

times and assessed Latoya as having neither "the knowledge nor appropriate support to deal with a child with trauma."

## IV. *The Jurisdiction Hearing and Subsequent Events*

At the jurisdiction hearing on June 15, 2023, the juvenile court sustained count b-1 of the petition.[2]  On June 21, 2023, Latoya petitioned the juvenile court to terminate her probate legal guardianship under section 728,[3] and the juvenile court signed an order terminating the guardianship on July 25, 2023.[4]

## DISCUSSION

Latoya contends the juvenile court's section 300, subdivision (b)(1), jurisdictional finding that she failed or was unable to adequately protect M.L. from the risk of serious physical harm to the child should be reversed because (1) it was not supported by substantial evidence, and (2) the juvenile court erred by not exercising jurisdiction under section 601 instead. We disagree.

---

[2]    The juvenile court struck counts alleging that M.L. had no parent to provide care and basic necessities of life.

[3]    Section 728, subdivision (a), authorizes the juvenile court to terminate the probate guardianship of a child who is the subject of a section 300 petition.

[4]    At the jurisdictional hearing, Latoya's counsel told the juvenile court that M.L. had a delinquency case in Nevada for her behavior.  In July 2023, the juvenile court stated that "the probation and the [district attorney's] office" in Nevada agreed to dismiss the Nevada delinquency action with the understanding that the juvenile court in this case would have jurisdiction.

# I.    *The Appeal Is Moot*

As a preliminary matter, we consider whether Latoya's appeal is moot.  "A court is tasked with the duty ' "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' [Citation.]  A case becomes moot when events ' "render[ ] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effective relief." ' [Citation.]  For relief to be 'effective,' two requirements must be met.  First, the plaintiff must complain of an ongoing harm.  Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*In re D.P.* (2023) 14 Cal.5th 266, 276.)  "In this context, relief is effective when it 'can have a practical, tangible impact on the parties' conduct or legal status.' " (*Id*. at p. 277.)

Latoya does not appeal or otherwise challenge the juvenile court's guardianship termination order—an order that she had herself requested—and does not argue that M.L. should be returned to her care.  To the contrary, in her June 21 termination request, Latoya stated she was "no longer willing to provide care for the child, does not wish to receive reunification services, and does not wish to continue as the child's legal guardian[ ]."  Latoya's appeal thus appears to be moot.

Latoya contends the juvenile court's jurisdiction finding that she failed or was unable to adequately protect M.L. is the equivalent of "[v]illainizing" her.  Latoya essentially contends that her ongoing harm is that the finding is stigmatizing.  Regardless of whether that were true, however, "stigma alone is not enough to avoid mootness." (*In re D.P.*, *supra*, 14 Cal.5th at

7

p. 278.)  We nonetheless will exercise our discretion to consider Latoya's appeal on the merits.  (See *id.* at p. 282 ["[e]ven when a case is moot, courts may exercise their 'inherent discretion' to reach the merits of the dispute"].)

**II.**  ***Substantial Evidence Supported the Juvenile Court's Finding of Jurisdiction over M.L. Under Section 300, Subdivision (b)(1)***

**A.**  ***Governing law and standard of review***

Section 300, subdivision (b)(1), provides in part that a child is within the jurisdiction of the juvenile court if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] . . . [t]he failure or inability of the child's parent or guardian to adequately supervise or protect the child."

" 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them.  "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." ' "  (*In re I.J.* (2013) 56 Cal.4th 766, 773; see *In re I.C.* (2018) 4 Cal.5th 869, 892; see *In re J.S.* (2021) 62 Cal.App.5th 678, 685.)  " ' "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." ' "  (*In re I.J.*, at p. 773.)

8

### B. *Substantial evidence supported the court's jurisdictional finding*

At the jurisdiction hearing, Latoya acknowledged that M.L. self-harmed, injured others, and "desperately need[ed]" services that the juvenile court could provide. Latoya argued, however, that she should not be held accountable for M.L.'s behavior when, after the child's prior legal guardian passed away, she had merely stepped in to help and "did what she could," but did not have enough resources to aid M.L.

On appeal, Latoya similarly contends the juvenile court's section 300, subdivision (b)(1) jurisdictional finding was not supported by substantial evidence because the evidence showed Latoya did "everything possible, within her means, to help [M.L.]," including seeking hospitalizations and providing therapy and medication, but the child "needed more." As in the juvenile court, Latoya does not seriously dispute that M.L. was at risk of physical harm. Rather, her argument is essentially that the jurisdictional finding should be reversed because there was insufficient evidence that she was at fault or to blame for the risk of harm to the minor.

The Supreme Court rejected a nearly identical argument in *In re R.T.* (2017) 3 Cal.5th 622 *(R.T.)*. In that case, R.T., a 14-year-old child, repeatedly ran away from home and skipped school. R.T.'s mother tried without success to supervise and protect R.T. and sought support from the Department and law enforcement. The mother later arranged for the child to live with the maternal grandparents because the grandfather worked with troubled youth, but R.T. threw a chair at him. The Department filed a section 300, subdivision (b)(1) petition alleging R.T. was at substantial risk of serious physical harm due to the mother's

9

failure or inability to adequately supervise or protect her. (*R.T.*, at p. 625.) R.T.'s mother argued subdivision (b)(1) jurisdiction was unwarranted because she had done "everything possible" to control her daughter's behavior and was not at fault for the risk of harm to the child. (*R.T.*, at p. 633.)

The Supreme Court agreed that the mother did not create the danger to R.T.—to the contrary, the mother had made "concerted (and at times desperate) efforts to protect and discipline R.T." (*R.T.*, *supra*, 3 Cal.5th at p. 633.) The court nonetheless found that the record supported the juvenile court's exercise of jurisdiction under section 300, subdivision (b). It explained: "Whether it was [the child's] misbehavior and disobedience, or mother's inability to supervise or protect [the child], . . . does not matter here. The basis for jurisdiction under section 300[, subdivision] (b)(1) is whether the child is at 'substantial risk' of 'serious physical harm or illness.' [Citation.] As mother admits, '[t]here is no doubt that [the child] . . . was at substantial risk of serious harm.' In that regard, given the substantial risk of harm that [the child] faced, there is little question that mother was unable to 'adequately' supervise or protect [the child]." (*R.T.*, at pp. 634–635.) Holding that dependency jurisdiction under subdivision (b)(1) is authorized "without a finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child," the court affirmed the assertion of jurisdiction over the child. (*R.T.*, at pp. 624, 637.)

Here, there was substantial evidence that M.L. was at risk of serious physical harm: She had threatened to kill herself and engaged in other behavior showing a desire for self-harm. There was also substantial evidence that, as she herself acknowledged,

10

Latoya lacked the resources to adequately protect M.L. and was unwilling to continue to care for the child as a result of the child's behavioral issues. Thus, regardless of whether there was any evidence that Latoya was at fault or blameworthy for her inability to protect M.L. from risk of harm, there was nevertheless substantial evidence to support the juvenile court's section 300, subdivision (b)(1), jurisdictional finding.

**III.** ***Latoya Fails To Show the Juvenile Court Erred by Exercising Jurisdiction Under Section 300 Rather Than Section 601***

Latoya contends the juvenile court erred by exercising jurisdiction over M.L. under section 300 rather than section 601, subdivision (a), which she asserts was "more appropriate for addressing the child's needs." (See § 601, subd. (a) [a minor between the ages of 12 and 17 "who persistently or habitually refuses to obey the reasonable and proper orders or directions of the minor's parents, guardian, or custodian, or who is beyond the control of that person" "is within the jurisdiction of the juvenile court which may adjudge the minor to be a ward of the court"].) She argues an assessment should have been, but was not, made pursuant to section 241.1 by "the agencies involved" whether jurisdiction should be exercised under section 601 as opposed to section 300.

Under section 241.1, "[w]henever a minor appears to come within the description of both Section 300 and Section 601 or 602, the county probation department and the child welfare services department shall . . . initially determine which status will serve the best interests of the minor and the protection of society." (§ 241.1, subd. (a).) The minor may not be designated as a dual status child—a "minor simultaneously both a dependent child

11

and a ward of the court"—unless certain requirements are met. (§ 241.1, subds. (d), (e).) The failure to adhere to section 241.1, however, is not jurisdictional and does not deprive the juvenile court of jurisdiction over a minor. (*In re M.V.* (2014) 225 Cal.App.4th 1495, 1509–1510.) Moreover, the failure to object to the absence of a section 241.1 assessment results in forfeiture. (*In re M.V.*, at p. 1508.)

As the Department points out, Latoya did not argue in the juvenile court that jurisdiction should be exercised under section 601 rather than section 300 and did not object to the absence of any section 241.1 assessment. She has thus forfeited the issue. In any event, the Supreme Court held in *R.T.*, *supra*, 3 Cal.5th 622 that a minor can be within the jurisdiction of both sections 300 and 601; in such a case, the juvenile court will determine which kind of jurisdiction " 'will serve the best interests of the minor and the protection of society.' " (*R.T.*, at p. 635.) Latoya has not demonstrated that M.L. would have been better served had the juvenile court taken jurisdiction under section 601, rather than section 300. And, as the Supreme Court in *R.T.* stated, "[M]other's preferred approach [that is, exercising jurisdiction under section 601 rather than under section 300] would bring with it demonstrably negative repercussions for [the child]: 'the delinquency finding carries with it a stigma that may follow the minor throughout his or her life.' " (*R.T.*, at p. 636.)

12

## DISPOSITION

The juvenile court's jurisdictional finding is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BERSHON, J.*

We concur:

EDMON, P. J.

EGERTON, J.

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.